<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROWLAND GLOBAL LLC,**<br>   *Plaintiff*,<br> v.<br><br>**GOOD CLEAN LOVE, INC.,**<br>   *Defendant*. | Civil Action No. 15-5738 (MCA)<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

  **THIS MATTER** comes before the Court by way of Defendant Good Clean Love, Inc.'s ("Defendant" or "GCL") motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue to the District of Oregon. Dkt. No. 5. Plaintiff Rowland Global LLC ("Plaintiff" or "Rowland Global") opposes the motion. Dkt. No. 9. The Court has decided the motion on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion is **DENIED in part and GRANTED in part**.

 **I.** **BACKGROUND**

  Defendant GCL, a manufacturer of natural personal products, is an Oregon corporation with its principal place of business in Eugene, Oregon. Compl. ¶ 2, Dkt. No. 1-1, Ex. A. Defendant's sole founder and CEO is Wendy Strgar ("Strgar"). Id. ¶ 5. On or about September 18, 2014, Strgar attended a natural products trade show in Baltimore, Maryland, where she met Edward Rowland ("Rowland"), founder and sole member/employee of Rowland Global, a consulting company based in Morristown, New Jersey. Id. ¶¶ 1, 5; Affidavit of Wendy Strgar ("Strgar Aff.") ¶ 10, Dkt. No. 5-2; Certification of Edward J. Rowland ("Rowland Cert.") ¶¶ 1, 4,

Dkt. No. 9-1.  During this meeting, Strgar and Rowland exchanged business cards.  Rowland Cert. ¶ 4, Ex. A.  Rowland's business card listed Rowland Global's Morristown, New Jersey address.  Id.[1]  Rowland also told Strgar he was a "one man" shop/show based in northern New Jersey.  Id. ¶ 5.

On September 23, 2014, Strgar initiated contact with Rowland via email requesting assistance "in helping me grow the Good Clean Love brand . . . ."  Id. ¶ 6, Ex. B.  Rowland responded to Strgar's email with, among other things, a draft non-disclosure agreement ("NDA")—which identified Rowland Global as a New Jersey company—and contained Rowland's signature block with Rowland's name and Rowland Global's Morristown, New Jersey address.  Id. ¶ 7, Ex. C.  On September 26, 2014, Strgar, on behalf of GCL, returned an executed copy of the NDA to Rowland.  Id. ¶ 8, Ex. D.  On that same day, Strgar initiated a telephone call to Rowland in New Jersey where they spoke for thirty-two minutes.  Id. ¶ 9.

On or about October 21, 2014, Rowland provided a W-9 to GCL which listed Rowland Global's Morristown, New Jersey address.  Id. ¶ 14, Ex. E.  On or about October 22, 2014, Strgar and Rowland met in New York City to discuss GCL and Rowland Global engaging in a consulting relationship.  Strgar Aff. ¶ 11.  The parties did not enter into a written contract but agreed to negotiate the execution of an agreement granting Rowland Global stock options or restricted stock in exchange for consulting services.  Id.[2]

---

[1] Strgar only asserts that "at the time of the trade show" she was unaware that Rowland Global was a New Jersey company.  Second Affidavit of Wendy Strgar ("2nd Strgar Aff.") ¶ 5.  She does not allege that she remained unaware of Rowland Global's New Jersey residence throughout the duration of their relationship.

[2] There is a dispute between Plaintiff and Defendant as to the amount that GCL agreed to pay Rowland Global in consulting fees.  Plaintiff contends that GCL agreed to pay $7,000 initially, while Defendant contends they only agreed to $1,000.  This dispute as to the amount is not relevant to determining jurisdiction over Defendant.  However, the parties did, on multiple occasions, discuss the fee amount via email.  See 2nd Strgar Aff. Ex. A; Rowland Cert. Ex. G.

Thereafter, there was a large volume of email traffic between Rowland Global and GCL. Rowland Cert. ¶ 10. According to Rowland, approximately 81.5% were sent (or he received) while Rowland was physically present in New Jersey. Id. Rowland Global's email records show at least 880 emails between Rowland Global and Defendant. Id. Of those emails, there were 148 emails from GCL/Strgar to Rowland Global and 97 emails from GCL (not Strgar) to Rowland Global. Id. Rowland was in New Jersey when 198 out of 242 of those emails were sent or received. Id.[3] Rowland Global's phone records also reveal that there were 49 phone calls between Rowland Global and GCL, 8 of which were done using a conference call number. Of the other 41 calls, 22 were initiated by GCL. Id. ¶ 11. Rowland was in New Jersey for 37 of the 41 calls. Id. Rowland Global's New Jersey counsel also had substantial contacts via email and telephone with GCL's Oregon counsel. Id. ¶ 12. On or about November 7, 2014, GCL mailed product samples to Rowland Global's Morristown address. Id. ¶ 15, Ex. F. Defendant also sent five checks to Plaintiff in New Jersey. Strgar Aff. ¶ 19.

Throughout the fall of 2014, Rowland negotiated with various potential Canadian distributors and obtained distribution agreements for GCL. Rowland Cert. ¶ 17. These negotiations were conducted via e-mail and telephone without any travel to Canada. Id. Rowland also contacted numerous European and Australian distributors for GCL via email and telephone while in New Jersey about 80% of the time. Id. ¶ 18.

In March and April 2015, Rowland met with Combe, an American competitor of GCL, who was interested in acquiring GCL. Id. ¶¶ 25-27. Rowland scheduled a meeting for April 7, 2015 for GCL at Combe's offices in White Plains, New York. Id. ¶ 27. Rowland, Strgar, and a GCL outside investor emailed each other about this meeting. Id. ¶ 29. The investor indicated

---

[3] As noted, Strgar and Rowland discussed Rowland Global's consulting fee via email. See 2nd Strgar Aff. Ex. A.

3

that he was supportive of an aligned success fee for Rowland Global, and Strgar responded that she was in full agreement. Id. at Ex. J. Strgar even suggested that Rowland and her "could maybe find a time to talk on Monday when" she got to New Jersey. Id. ¶ 29. On April 6, 2015, Strgar flew into Newark, New Jersey where she met Rowland for dinner for a "preparatory rundown." Id. ¶ 30; Compl. ¶ 12. During this meeting, Strgar and Rowland allegedly discussed a 2% fee for Rowland Global for the Combe deal. Compl. ¶ 12, Rowland Cert. ¶ 30.[4] On May 11, 2015, Combe forwarded a letter of intent to purchase GCL's assets. Rowland Cert. ¶ 31. Rowland promptly sent GCL a written contract confirming the agreement, but GCL allegedly repudiated the 2% fee agreement and outstanding obligations for consulting services to Rowland Global. Compl. ¶ 14.

On or about June 26, 2015, Plaintiff commenced the instant action against Defendant in the Superior Court of New Jersey, Law Division, Morris County. Notice of Removal ¶ 1, Dkt. No. 1. On July 23, 2015, Defendant removed this action to this Court. Id. Plaintiff alleges that Defendant breached its obligation to pay Plaintiff for consulting services and asserts three causes of action: (1) breach of contract; (2) misrepresentation; and (3) quantum meruit/unjust

---

[4] Defendant concedes that this meeting "implicates New Jersey." Def. Moving Br. at 15. Dkt. No. 5-1. However, Defendant contends this meeting was merely a dinner for Rowland's birthday and that the parties did not discuss the success fee or "verbally agree" to pay Rowland Global a success fee. See Strgar Aff. ¶ 18. Defendant contends that the only business discussed during this dinner was in connection with the scheduled meeting with Combe the next day. Id. Defendant explains that this dinner was her only contact with New Jersey in connection with this action, aside from sporadic telephone calls and emails to Rowland. Id. ¶ 19. Defendant further contends that she discussed the fee with Rowland on sporadic occasions via email and telephone in March, April, and May 2015 but that she "did not discuss the fee with Rowland in New Jersey at any point, nor did [she] 'verbally agree to it on behalf of GCL.'" Strgar Aff. ¶ 15. Plaintiff's Complaint and Affidavits contradict Defendant's assertions. However, when evaluating a motion to dismiss for lack of personal jurisdiction, where "the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." Haffen v. Butler Specialties, Inc., No. 10-cv-2833, 2011 WL 831933, at *2 (D.N.J. Mar. 3, 2011) (internal citation omitted). Accordingly, the Court construes this fact in Plaintiff's favor.

enrichment.  Compl. Ex. A., Dkt. No. 1-1.  Specifically, Plaintiff alleges that Defendant agreed to pay Plaintiff $7,000 per month in consulting fees and 2% of the value of the Combe transaction negotiated by Plaintiff.  Id. ¶¶ 5, 11-14.

On August 13, 2015, Defendant moved to dismiss Plaintiff's Complaint for lack of personal jurisdiction, alleging that Defendant lacks the requisite minimum contacts with New Jersey for this Court to exercise personal jurisdiction.  Dkt. No. 5.  In the alternative, Defendant argues that this case should be transferred to the District of Oregon.  Id.  Defendant also seeks to dismiss Count Two—intentional misrepresentation—for failure to state a claim.  Id.  Plaintiff opposes the motion.

## II.    LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted).  Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor."  Haffen v. Butler Specialties, Inc., No. 10-cv-2833, 2011 WL 831933 at *2 (D.N.J. Mar. 3, 2011) (internal citation omitted).  The plaintiff, however, retains "the burden of demonstrating [that the defendant's] contacts with the forum state are sufficient to give the court in personam jurisdiction." Mesalic v. Fiberfloat Corp., 897 F.2d 696, 699 (3d Cir.

1990). "These contacts must be shown 'with reasonable particularity.'" Wellness Publ'g v. Barefoot, 128 F. App'x 266, 268 (3d Cir. 2005) (quoting Mellon Bank v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law," Miller Yacht Sales, 384 F.3d at 96, and the New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Henry Heide, Inc. v. WRH Prods. Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe v. Renaissance Marine, Inc., 566 F. 3d 324, 334 (3d Cir. 2009). Here, Plaintiff only argues for specific jurisdiction over Defendant, so the Court will focus on specific jurisdiction. "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" Miller Yacht, 384 F.3d at 96 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). A defendant, however, need not be physically present in a state to have availed himself of the privilege of conducting activities there. See Burger King Corp., 471 U.S. at 472.

### III. ANALYSIS

Plaintiff argues that Defendant purposefully directed its activities toward the state of New Jersey, thereby conferring specific jurisdiction over it. This Court agrees.

#### a. Personal Jurisdiction

Specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Abel v. Kirbaran, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted). To prove specific jurisdiction, the plaintiff must show that the defendant has "purposefully directed [its] activities" at the forum. Burger King, 471 U.S. at 472. Second, the litigation must "arise out of or relate" to at least one of those activities. Id.; see also Grimes v. Vitalink Commc'ns. Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). If these two requirements are met, the court then considers whether the exercise of jurisdiction would "comport with fair play and substantial justice." Burger King, 471 U.S. at 476 (quotation marks omitted).

Merely contracting with a resident of the forum state is insufficient, standing alone, to support a finding of personal jurisdiction. See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 151 (3d Cir. 1996). When analyzing purposeful availment in breach of contract cases, however, courts may look to "prior negotiations" and "contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Control Screening LLC v. Technological Application and Prod. Co. (Tecanro), 687 F.3d 163, 168 (3d Cir. 2012) (quoting Burger King, 471 U.S. at 479); see also Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. Burger King, 471 U.S. at 475 n.18. "Various forms of communications between parties, including written correspondence, telephone calls, and emails, factor into the minimum contacts analysis." Carrabba v. Morgat, No. 12-6342, 2014 U.S. Dist. LEXIS 7799, at *13 (D.N.J. Jan. 17, 2014). "[W]hen the plaintiff can proffer evidence of a defendant deliberately directing mail, telephone, and/or email communications to the forum state," then a finding of personal jurisdiction may be proper. Id. (internal citation omitted); see, e.g., Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) (affirming exercise of personal jurisdiction over foreign defendants who had twelve phone calls with a resident of the forum state for purposes of contract negotiation); Miller Yacht Sales, 384 F.3d at 100; Vanz, LLC v. Mattia & Assocs., No. 13-cv-1392, 2014 WL 1266220 at *2-3 (D.N.J. Mar. 26, 2014); Am. Bd. of Int. Med. v. Rushford, No. 14-cv-6428, 2015 U.S. Dist. LEXIS 116861 (D.N.J. Sept. 2, 2015); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 149 (3d Cir. 1992) (minimum contacts established where defendant not only sent communications to New Jersey, but also traveled to the state); Vetrotex Certainteed Corp., 75 F.3d at 152-53 (explaining that personal jurisdiction has been found in cases where the defendant solicited the contract or initiated the business relationship leading up to the contract; where the defendant sent any payments to the plaintiff in the forum state; and where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state) (internal citations omitted).

Given the totality of the circumstances in the instant case and construing any disputed facts in Plaintiff's favor, the Court first finds that Defendant purposefully directed its activities at New Jersey. The parties' course of dealing shows a connection to New Jersey. Defendant

repeatedly called and emailed Plaintiff in New Jersey and even met with Plaintiff in New Jersey to discuss the fees at issue in this case.  Based on these contacts, a reasonable person should anticipate being haled into court in New Jersey.

Although the parties initially met in Baltimore, Maryland, they exchanged business cards, which contained Rowland Global's New Jersey address on it.  Thereafter, Strgar reached out via email to engage Rowland Global to help grow the GCL brand.  Defendant then signed a NDA which included Rowland Global's New Jersey address in the actual agreement and in the signature of Rowland's email.  Strgar then initiated a thirty-two minute phone call to Rowland in New Jersey.  GCL also received Rowland Global's W-9 which listed Rowland Global's New Jersey address.  Finally, GCL mailed sample products and sent payments to Rowland Global's New Jersey address.  Therefore, from the outset of their relationship, Defendant knew it was reaching into New Jersey to engage work from a New Jersey entity.

The record also demonstrates that there was a large volume of emails between Rowland Global and GCL, including at least 148 emails from GCL/Strgar to Rowland Global and 97 emails from GCL (not Strgar) to Rowland Global.  Rowland was physically in New Jersey for 198 out of 242 of these emails.  GCL also initiated at least 22 calls to Rowland Global, most of which occurred while Rowland was in New Jersey.

The majority of the consulting services Rowland provided to GCL were performed in New Jersey, and Strgar admits that she "anticipated some of Plaintiff's activities in performing the contract might have been carried out in New Jersey." Dkt. No. 5-1, at 13-14.  Finally, Strgar traveled to New Jersey on April 6, 2015 and met Rowland for a preparatory session for their meeting with Combe.  Strgar even admits that during their dinner meeting they discussed business for the Combe meeting.  At this meeting, Strgar also allegedly agreed to pay Rowland

9

Global a 2% fee from the Combe deal.  Although this meeting standing alone might be insufficient, when taken together with Defendant's other contacts with New Jersey, it demonstrates that Defendant purposefully directed its activities to New Jersey.

Second, the Court must determine if the litigation arises out of or relates to Defendant's activities directed at New Jersey. "Where the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction so long as the other criteria are met."  Grand Entm't, 988 F.2d at 483 (citing Burger King, 471 U.S. at 475 n. 18); Carrabba v. Morgat, 2014 WL 229280, at *5.  ("[A] single email exchange might be enough to support jurisdiction if that very communication gave rise to the cause of action.").  Here, Plaintiff claims that Defendant breached its obligation to pay Plaintiff for consulting services. The contacts discussed above directly relate to the consulting services and agreements between Rowland Global and GCL, and therefore give rise to this litigation.  Accordingly, the Court finds this case arises out of Defendant's activities directed at New Jersey.

Finally, the Court must determine whether these contacts satisfy the "fairness requirement," i.e., whether exercising jurisdiction otherwise comports with traditional notions of fair play and substantial justice.  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).  The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  See Burger King, 471 U.S. at 477. Defendant does not present a compelling case that litigating in New Jersey would be unreasonable and unfair, given the acts and expectations of the parties as discussed above.  As a result, Defendant's motion to dismiss for lack of personal jurisdiction is **DENIED.**

### b. Transfer Under 28 U.S.C. § 1404(a)

In the alternative, Defendant seeks to transfer this action to the District Court of Oregon pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) of the United States Code provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The burden of establishing the need for a transfer of venue rests with the moving party. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). When deciding a motion to transfer venue, a district court should remember that "the plaintiff's choice of venue should not be lightly disturbed." Id. The Court must consider all relevant public and private interests in favor of an opposition to transfer, and not just the three enumerated factors in § 1404(a). Jumara, 55 F.3d at 879. The private interests include (1) the preferences of the parties; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial condition; (4) the extent to which any witnesses might not be available for trial in the chosen forum; (5) the extent to which books and records could not be produced in the chosen forum. Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations of the trial; (3) court congestion; (4) local interest in deciding local controversies; (5) public policies of the fora; (6) and familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879-80 (citations omitted). Ultimately, "the plaintiff's choice of forum will not be disturbed unless the balance of interest tilts strongly in favor of a transfer." Fox v. Dream Tr., 743 F. Supp. 2d 389, 405 (D.N.J. 2010) (quoting Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001)).

Defendant contends that the Court should disregard Plaintiff's choice of forum because the central facts of this lawsuit did not occur in New Jersey, but rather occurred in Oregon, Maryland, New York, and other countries. Defendant argues that Defendant and all of Defendant's witnesses, books, and records are located in Oregon. Defendant further argues that New Jersey has no connection to this action, and that it would be easier to enforce the judgment in Oregon. The Court disagrees.

The private and public interest factors weigh against transfer. When a plaintiff chooses her home forum, where she suffered an injury, that choice is given considerable deference. Fox, 743 F. Supp. 2d at 405 (citing Sandvik, Inc. v. Cont'l Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989)). Defendant argues that the case has no connection to the forum, but the Court has already explained why it finds that the action has a meaningful connection to New Jersey and why the injury occurred in New Jersey. Defendant has not provided any indication that it cannot afford to litigate in New Jersey. Rowland, on the other hand, is a solo consultant, and requiring him to litigate across the country would constitute a hardship. In addition, the enforcement of any judgment, the relative congestion of courts, and relative familiarity with the relevant state law are largely non-factors in deciding between the two districts. Accordingly, weighing all of the enumerated factors and given the importance of Plaintiff's choice of forum, this case will remain in the District of New Jersey. Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

### c. Dismissal of Count Two

Finally, Defendant contends that Count Two—a claim for intentional misrepresentation—must be dismissed for failure to adequately allege damages and for failure to plead damages with sufficient particularity.

The Court construes a claim of "intentional misrepresentation" as one for fraud. Boyko v. Am. Int'l Grp., Inc., No. 08-2214, 2009 U.S. Dist. LEXIS 119279, at *8 (D.N.J. Dec. 23, 2009) (citing Jewish Ctr. of Sussex Cnty. v. Whale, A.2d 521, 524 (N.J. 1981)). Under New Jersey law, the five elements of fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Federal Rule of Civil Procedure 9(b) requires that Plaintiff plead their damages with particularity. See Rothman v. Specialty Care Network, Inc., No. 00-2445, 2000 U.S. Dist. LEXIS 14371, at *16 (E.D. Pa. Oct. 2, 2000). Conclusory allegations of damages are not sufficient. Torsiello v. Strobeck, 955 F. Supp. 2d 300, 316 (D.N.J. 2013)

In Count Two, Plaintiff contends that GCL, through Strgar, falsely represented that GCL would pay a 2% fee to Rowland Global for a third party transaction, "should that transaction ensure . . ." Compl. ¶ 11, id. Count Two, ¶ 4-7. Defendant seeks dismissal of Count Two, arguing that there is no allegation in the Complaint that the transaction actually was completed, or that any money has been paid to Defendant.   This Court agrees.

Plaintiff contends it has sufficiently pled a claim for fraud because New Jersey law protects brokers who find qualified buyers. See, e.g., Kislak Co., Inc. v. Byham, 229 N.J. Super. 163, 165 (N.J. Super. Ct. App. Div. 1988) ("When the broker produces a buyer ready and willing to purchase on the seller's terms, and a contract is not entered into by reason of the seller's fault, as for example, where he subsequently changes his mind, the seller is liable to the broker for the commission."). But the law that Plaintiff cites concerns claims asserted for breach of broker's agreements – not fraud. Here, the misrepresentation pled is that defendants agreed to pay a fee

13

"should a transaction ensue," and there is no allegation that such transaction occurred and that Defendant would be entitled to a fee.[5] Thus, Plaintiff has not sufficiently plead a false representation. Stated differently, unless Plaintiff alleges that the transaction was consummated and that Defendant refused to pay the commission, there would be no fraud. Accordingly, Count Two of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

### IV. CONCLUSION

In light of the foregoing, Defendant's motion to dismiss is **DENIED in part** and **GRANTED in part**. An appropriate order accompanies this opinion.

**DATE:** March 14, 2016

s/ <em>Madeline Cox Arleo</em><br>
**MADELINE COX ARLEO**<br>
**UNITED STATES DISTRICT JUDGE**

---

[5] Although not relevant to the sufficiency of the pleadings on a motion to dismiss, Defendant claims that the transaction with Combe was never consummated. See Strgar Aff. ¶ 16 (explaining that no transaction has been entered into between Combe and GCL, and Defendant has not been paid any money); see also 2nd Strgar Aff. ¶¶ 18-19 (explaining that Combe is not presently interested in consummating the transaction with GCL, there are no active negotiations with Combe, and no transaction has been entered into).